UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

EUGENE BRAMLETT and SUZAN BRAMLETT                                    PLAINTIFFS


V.                                                      CIVIL ACTION NO. 1:06CV134 LTS-RHW


STATE FARM FIRE AND CASUALTY COMPANY
and STEVE SAUCIER                                                      DEFENDANTS


**MEMORANDUM OPINION**

The Court has before it Plaintiffs Eugene and Suzan Bramlett's (the Bramletts) motion to remand.  For the reasons set out below, this motion will be granted.

This is an action for losses attributable to property damage sustained in Hurricane Katrina.  Plaintiffs were insured under a homeowners insurance policy issued by Defendant State Farm Fire and Casualty Company (State Farm).  The homeowners policy is number 24-B5-4693-5.  The State Farm homeowners policy has policy limits of $104,500 for "Dwelling"; $10,450 for "Dwelling Extension"; and $78,375 for "Personal Property."  The homeowners policy also includes coverage for "Loss of Use."  The homeowners policy includes an endorsement identified on the declarations page as "Increase Dwelling up to $20,900 OPT ID" but this endorsement was not included in the certified copy of the policy filed by Defendant State Farm as Exhibit H to its Response in Opposition to Motion to Remand.

Plaintiffs were also insured under a flood insurance policy issued by State Farm under the National Flood Insurance Program.  The flood insurance policy is number 24-RB-4153-0.  The application for the flood insurance policy, dated February 22, 2000, and signed by Plaintiff Eugene Bramlett, indicates policy limits of $67,500 for "Building" and no coverage for contents. (Flood Insurance Application Exhibit E to Defendant State Farm's Response in Opposition to Motion To Remand and Substitute Exhibit E subsequently filed).  Both the homeowners policy and the flood policy covered the plaintiffs' property situated at 884 East North Street, Pass Christian, Mississippi. (Complaint Paragraph 10)

Plaintiffs purchased these policies through State Farm's local agent, Defendant Steve Saucier.  The State Farm homeowners policy contains an exclusion for certain types of damage caused by water, as set out in the policy.  This water damage exclusion includes water damage caused by flooding.

During Hurricane Katrina the Bramletts' property (both buildings and contents) sustained substantial damage from water that inundated the plaintiffs' property. State Farm denied coverage for these losses under the plaintiffs' homeowners policy on the grounds that they were excluded losses under the terms of that policy. State Farm has paid the policy limits of flood insurance applicable to the insured building. The flood policy the plaintiffs purchased did not provide coverage for the contents of the plaintiffs' insured building. One of the allegations of the complaint is that Saucier failed to procure contents coverage under the flood policy as the plaintiffs requested and as Saucier allegedly agreed to do. The plaintiffs' request and Saucier's agreement to procure contents coverage occurred at some point between the time the flood policy was first purchased, in 2000, and the date of the storm, August 29, 2005.

The state court complaint alleges three conversations that were involved in the negotiations between the plaintiffs and Defendant Saucier concerning the purchase of these two insurance policies. The complaint alleges that the first conversation concerning these insurance contracts occurred in 2000. At that time, the complaint alleges that the plaintiffs sought coverage for "damage caused by hurricanes." (Complaint Paragraph 11) At that time, it appears from the exhibits that the plaintiffs purchased both the homeowners policy and the flood policy in effect at the time of Hurricane Katrina. Between the time these policies were purchased in 2000 and the time of the storm, the policies were renewed annually.

The complaint alleges that a second conversation occurred in 2004 when the plaintiffs spoke with an unidentified person alleged to be Saucier's employee. Plaintiffs allege that they sought an assurance that "their property including content [sic] were fully covered for all losses." (Complaint Paragraph 13) Plaintiffs allege that this individual assured them that "you are fully covered." (Complaint Paragraph 13)

Plaintiffs allege there was a third conversation, subsequent to the conversation alleged in paragraph 13 of the complaint. This time the plaintiffs' conversation is alleged to have been with Defendant Saucier directly. The plaintiffs allege that they requested an increase in the coverage for the contents of the insured property under "all policies" to $78,375. (Complaint Paragraph 14) Plaintiffs allege that Saucier personally inspected their property and agreed to provide the requested increase in coverage under both policies. (Complaint Paragraph 14) According to the complaint, Saucier advised the plaintiffs that there was a limit on the coverage available for contents and that this limit was 70% of the value of the building. Saucier allegedly added a separate endorsement for jewelry and furs, but failed to inform the plaintiffs that there was a separate endorsement available for other contents which would have allowed them to increase their contents limit above the 70% limit Saucier described. (Complaint Paragraph 14) The date of this final exchange is not stated in the complaint. Plaintiffs allege that they were not furnished with a copy of their policies until after the loss was sustained in Hurricane Katrina and that they then discovered they had no contents coverage under their flood policy. (Complaint Paragraph 14)

On September 26, 2005, State Farm issued its check, payable to the plaintiffs and Regions Bank (a loss payee and additional insured), for $82,500 representing the policy limits on flood policy number 24-RB-4153-0.  There is no evidence in the record of how or when the flood insurance policy limits were increased from $67,500 to $82,500.  The flood insurance policy limits were paid for "Flood-Building." (State Farm Check Number 1 09 938282 J - Exhibit L to Defendant State Farm's Opposition to Motion To Remand)

On September 8, 2005, State Farm issued its check, payable to the plaintiffs, for $2,500.  The stub for this check indicates that it is for "Coverage B Contents Hurricane Katrina Advance Payment." (State Farm Check Number 549337 - Exhibit M to Defendant State Farm's Opposition to Motion To Remand)

On October 1, 2005, State Farm issued its check, payable to the plaintiffs, for $2,551.13.  The stub for this check indicates that it is for "R&R roof, tree removal, fence." (State Farm Check Number 509 859 832 Q - Exhibit M to Defendant State Farm's Opposition to Motion To Remand)

On January 13, 2006, State Farm issued its check, payable to the plaintiffs, for $2,378.30.  The stub for this check indicates that it is for "additional living expenses." (State Farm Check Number 1 09 132316 J - Exhibit M to Defendant State Farm's Opposition to Motion To Remand)

On January 20, 2006, State Farm issued its check, payable to plaintiffs, for $2,500.  The stub for this check has the printed or typed words "Additional Living Expenses" struck through and a hand written notation that appears to me to be "wind." (State Farm Check Number 1 09 133936-J - Exhibit M to Defendant State Farm's Opposition to Motion To Remand)

State Farm's Exhibit J to its opposition to the motion to remand appears to me to be the front page of a multi-page document that admonishes the recipient to review the coverages in the "accompanying renewal notice."  The document that indicates what these coverages are, presumably the renewal notice, does not appear to be part of this exhibit.  This document bears a date of January 7, 2005.

State Farm has removed this action on grounds of diversity of citizenship, alleging that the Bramletts have fraudulently joined Saucier in order to defeat diversity jurisdiction.  State Farm also asserts that there is federal question jurisdiction under 42 U.S.C. §4072 of the National Flood Insurance Act and under 28 U.S.C. §1331.

Fraudulent joinder is an issue on which State Farm has the burden of proof.  *B., Inc., v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). State Farm's burden has been characterized as a heavy one because, in making the assessment whether joinder of a non-diverse defendant is fraudulent or legitimate, the district court must assume all the well-pleaded facts in the complaint to be true, must grant the plaintiffs all reasonable favorable inferences, and must resolve all doubtful issues of state law in favor of the

party seeking remand. *Dodson v. Spiliada Maritime Corp.*, 951 F2d 40 (5th Cir.1992); *Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir.2000).

Under these guidelines, this court must determine whether there is any reasonable basis upon which the plaintiffs could prevail and establish a right of recovery against the non-diverse defendant. If there is such a basis, the case must be remanded for resolution in the court where the action was originally filed.

Federal question jurisdiction exists if plaintiffs are claiming additional benefits are payable under their flood insurance policy. *Winkler v. State Farm Fire and Casualty Company*, 266 F.Supp.2d 509 (S.D.Miss.2003) The relevant cases draw a distinction between claims related to the handling and adjustment of claims, for which the federal courts have exclusive jurisdiction, and claims related to the procurement of flood coverage, which fall outside federal jurisdiction under the National Flood Insurance Act. Compare *Winkler v. State Farm Fire and Casualty Company*, 266 F.Supp.2d 509 (S.D.Miss.2003) with *Landry v. State Farm Fire and Casualty Company,* 428 F.Supp.2d 531 (E.D.La.2006)  on Motion To Alter or Amend Order or, in the Alternative, To Vacate Remand Order, *Landry v. State Farm Fire and Casualty Company*, 2006 WL 1593318 (E.D.La.2006).  State Farm argues strongly that this distinction has been eliminated by the decision in *Wright v. Allstate Ins. Co.*, 415 F.3d 384 (5th Cir. 2005).  My reading of the *Wright* decision does not support this conclusion.

<u>Allegations of the Complaint</u>

As I appreciate the allegations of the complaint, construed with all inferences favorable to the plaintiffs, the Bramletts contend that Saucier agreed to procure insurance for the contents of their insured property in the amount of $78,375 under both their homeowners policy and their flood policy.  Plaintiffs' flood policy had no contents coverage at the time of the loss, so if plaintiffs' allegation is correct Saucier has failed to procure the flood coverage he agreed to get for the plaintiffs.

The plaintiffs' homeowners policy has contents coverage of $78,375, the amount the plaintiffs allege they requested for contents coverage under *both* policies in the third conversation described in paragraph 14 of the complaint.  Thus, plaintiffs are not contending that Saucier failed to get the amount of contents coverage he was asked to get in the homeowners policy.  The plaintiffs' claim for Saucier's failure to secure contents coverage relates only to the flood policy.

The allegations against Saucier concerning the homeowners policy are not as clear as those that concern his alleged failure to secure contents coverage under the flood policy.  Plaintiffs apparently contend that the 70% limit on contents coverage under the State Farm homeowners policy could have been obviated by the purchase of a separate endorsement, an endorsement that Saucier failed to offer them, despite his having inspected the insured property and despite his having been told that the value of the contents of the secured property was between $250,000 and $500,000.  Plaintiffs allege that this was actionable negligence.

### Standard of Care Applicable to Insurance Agents

Under applicable Mississippi law, an insurance agent or broker who undertakes to procure insurance for a customer is under a duty to the prospective purchaser to exercise reasonable care, and this includes the duty to procure the coverages requested.  *McKinnon v. Batte*, 485 So.2d 295 (Miss.1986); *Lovett v. Bradford*, 676 So.2d 893 (Miss.1996); *First United Bank of Poplarville v. Reid*, 612 So.2d 1131 (Miss.1992).

### Negligent Misrepresentation Under Mississippi Law

Plaintiffs allege that Saucier gave them incomplete or inaccurate information about the amount of contents coverage they could purchase.  According to the complaint, plaintiffs told Saucier they had pottery molds valued at between $250,000 (actual cash value) to $500,000 (replacement cost) that they needed to insure.  Saucier allegedly told them that the limit on the available coverage was 70% of the value of their building.  Plaintiffs allege that this information was inaccurate and that there were endorsements available which would have allowed them to fully insure the contents of their building.

Under applicable Mississippi law, in order to state a cause of action for negligent misrepresentation, the aggrieved party must prove, by a preponderance of the evidence:

1. That there was a misrepresentation (or omission) of a fact;
2. That the misrepresentation (or omission) was material or significant;
3. That the misrepresentation (or omission) was the product of negligence, i.e. that the person making the representation or omission failed to exercise reasonable care;
4. That the person to whom the representation (or omission) was made reasonably relied upon the representation (or omission); and
5. That the person to whom the representation (or omission) was made suffered damages as a direct and proximate result of that reasonable reliance.

*Berkline v. Bank of Mississippi*, 453 So.2d 699 (Miss.1984); *Spragins v. Sunburst Bank*, 605 So.2d 777 (Miss.1992).  These essential elements may fit one of Bramletts' theories of recovery against Saucier.

Of course, the truth of Bramletts' allegations; the circumstances in which the events in question transpired; the question of what coverages were discussed and what decisions on coverage were made; and the reasons for these decisions are all questions for the finder of fact to decide after consideration of the evidence supporting the claim and consideration of the evidence offered by the defense.  Likewise the issues related to the standard of care that applies to Saucier and whether his actions met that standard of care are questions that must be answered on a more complete

record.  At this juncture, however, for the purpose of deciding whether a fraudulent joinder has occurred, the Bramletts' allegations must be accepted as true; they must be granted all reasonable inferences in favor of their theory of recovery; and any doubtful issues of state law must be resolved in their favor.

Without venturing any opinion on the merits of the Bramletts' claim, it appears to me that under the standards applicable to ascertaining whether a fraudulent joinder has occurred, Saucier and State Farm have failed to establish that the Bramletts have no viable legal theory upon which they may proceed against Saucier under the Bramletts' version of events.

My review of the allegations of the complaint and the exhibits submitted by State Farm indicate that the policy limit of the plaintiffs' flood insurance policy has been paid. As I appreciate the allegations of the complaint, plaintiffs contend that Saucier was negligent in failing to procure contents coverage under the flood policy as they allegedly requested and as Saucier allegedly agreed to do.  The plaintiffs' cause of action against Saucier is for negligence in connection with the procurement of contents coverage under the flood policy in question.  If the plaintiffs prevail on these claims under Mississippi law, it will not increase their flood insurance coverage under the flood insurance policy, and it cannot, as a matter of law, result in the collection of additional benefits under the National Flood Insurance Program.  The policy limits under the flood policy have been paid, and the plaintiffs have not alleged that any additional benefits are owed under the terms of the flood policy.  Thus this case falls outside the scope of federal question jurisdiction under the National Flood Insurance Act.  I find the facts of this case virtually indistinguishable from those of *Landry v. State Farm Fire and Casualty Company*, 428 F.Supp2d 531 (E.D.La.2006) on Motion To Alter or Amend Order or, in the Alternative, To Vacate Remand Order, *Landry v. State Farm Fire and Casualty Company*, 2006 WL 1593318 (E.D.La.2006), and I agree with Judge Fallon's reasoning on this point.  With respect to the flood policy, plaintiffs contend that Saucier failed to procure the coverage the plaintiffs requested and he (Saucier) agreed to secure for them.  This dispute concerns procurement of coverage, not the adjustment of a claim under the flood policy.

Accordingly, I will grant the motion to remand without prejudice to the right of the defendants to remove this case a second time in the event the case should become removable during subsequent state court proceedings.  The subsequent removal of this action would, of course, be subject to the one-year time limit for the removal of diversity cases under 28 U.S.C. §1446 and all other rules and decisions governing the right of removal.

An appropriate order will be entered.

Decided this 4th day of August, 2006.

                                                          s/ *L. T. Senter, Jr.*
                                                          L. T. Senter, Jr.
                                                          Senior Judge